IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER PESOTINE, et al.  :
:
Plaintiffs,  :
v.  :  3:14-CV-784
:  (JUDGE MARIANI)
LIBERTY MUTUAL GROUP, INC, et al.  :
:
Defendants.  :

## MEMORANDUM OPINION

### I. Procedural History

On March 7, 2014, Plaintiffs, Christopher Pesotine and Colleen Pesotine, filed a Complaint in the above-captioned matter in the Court of Common Pleas of Luzerne County, alleging Breach of Contract (Count I), Bad Faith, 42 Pa. Cons. Stat. Ann. § 8371 (Count II), and Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1, *et seq.* (Count III). (Compl., Doc. 1, Ex. A-1). Defendants, Liberty Mutual Group, Inc., and The First Liberty Insurance Corporation, thereafter removed this action to federal court. (Doc. 1).

On April 30, 2014, Defendants filed a motion to dismiss defendant Liberty Mutual Group and Count III of the Complaint. (Doc. 3). Upon Defendants' request, the Court held oral argument on Defendants' motion, at which time it denied the motion to dismiss Liberty Mutual Group as a party but reserved ruling on Defendants' motion to dismiss Count III of

the Complaint. (Unoff. Tr., at 15-16). For the reasons set forth below, the Court will now grant Defendants' motion with respect to Count III.

## II. Factual Allegations

Plaintiffs' lengthy Complaint alleges the following pertinent facts.

On October 28, 2008, Defendants issued an insurance policy to Plaintiffs, providing the Pesotines with homeowners' insurance coverage from November 30, 2008 through November 30, 2009. (Compl., ¶¶ 9-10). The insurance policy provided coverage for Plaintiffs' residence, including "their home, as a dwelling with expanded replacement cost"; "other structures on the residence premises"; "personal property with replacement cost"; loss of use of residence premises"; "increased limits and additional coverages"; "an 'Inflation Protection'"; and "'loss of use', debris removal', and additional coverages'" under the "Special Provisions – Pennsylvania" section. (*Id.* at ¶ 13).

On January 23, 2009, a fuel valve broke off from under the fuel tank at the plaintiffs' residence, resulting in "fuel extensively leaking and the home being inundated with heavy fuel fumes." (*Id.* at ¶ 15). That evening, Plaintiffs (1) contacted Liberty Mutual, "providing notice of loss and damage in accordance with the terms and requirements" of the policy, in response to which Defendants "assured them that their claim would be handled in a timely manner" and (2) subsequently contacted a contractor to "mitigate the fuel leak and attempt to limit the odors." (*Id.* at ¶¶ 16, 18).

On January 26, 2009, after having no further contact with Defendants, Plaintiffs contacted Liberty Mutual again. (Compl., ¶ 19). The following day, Plaintiffs were contacted by Lisa Speropolous, an Environmental Claims Specialist for Liberty Mutual, who forwarded Plaintiffs an acknowledgment of their claim notification; Defendants also forwarded correspondence to Plaintiffs "which highlighted the 'many benefits and services' of Plaintiffs' homeowners policy. (*Id.* at ¶ 21-23). In February, 2009, Liberty Mutual hired Jacques Whitford to perform a cause and origin groundwater investigation of Plaintiffs' residence, resulting in a letter from Speropolous confirming the details of how the subject incident occurred and that there was "property coverage for this loss." (*Id.* at ¶ 26). At the request of Defendants, Plaintiffs also hired Alicon Environmental to conduct a site delineation. (*Id.* at ¶ 28).

On March 11, 2009, Plaintiffs hired Kevin Kennedy, a public adjustor, to "assist them in obtaining appropriate relief from Defendants." (*Id.* at ¶ 29). Over the next several months, Plaintiffs received estimates and cost proposals from various individuals and companies regarding, among other things, the costs of inspections, remediation of the property, and demolition and removal of debris from the property. (*Id.* at ¶¶ 33, 35-36, 38, 43, 44). Beginning in July, 2009, Plaintiffs "could no longer continue residing in their home," and relocated to a rental apartment. (*Id.* at ¶ 42).

In September, 2009, because "Defendants still refused to release the policy limits to Plaintiffs" and Defendants failed to reimburse Plaintiffs for their expenses, the Pesotines

retained counsel to assist them in obtaining the requested relief. (Compl., ¶ 50). On October 8, 2009, Speropolous informed Plaintiffs that "Defendants are agreeable to settling with the Pesotines prior to the start of remediation for the actual cash value of the home." (*Id.* at ¶ 57). Plaintiffs continued to forward various estimates to Defendants over the next few months and, on December 10, 2009, Plaintiffs' counsel wrote to Defendants "regarding their continued failure to offer any response to the building damage loss/estimates, personal property loss/estimates and loss of use reimbursement demand in regards to the subject claim." (*Id.* at ¶ 68).

On January 8, 2010, Professional Claims Service ("PCS") issued a Claim Report at the request of Defendants, assessing the value of the building loss at $151,185.93; debris removal at $6,120.00; and loss of other structures at $11,471.66. (Compl., ¶ 90). On January 19, 2010, PCS issued a revised Claim Report wherein it removed all costs for loss of other structures. (*Id.* at ¶ 101). In February, 2010, Defendants issued two checks, one in the amount of $850.00 for rent payment, and another in the amount of $151,185.93 for the actual cash value of Plaintiffs' home. (*Id.* at ¶ 107). Defendants had previously issued Plaintiffs checks in December, 2009, in the amount of $5,100 for payment for "Coverage D" of the insurance policy, and in the amount of $10,801.00 to Alicon. (*Id.* at ¶¶ 76, 79, 97).

Subsequent to Defendants' payments in February, 2010, Plaintiffs and their representatives continued to correspond with Defendants and repeatedly forwarded invoices and cost proposals to Defendants. The Pesotines also paid various bills for costs

related to, and as peripheral results of, the damage to their home, for some of which Defendants reimbursed Plaintiffs. (*See generally*, *id.* at ¶¶ 109-198).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

Defendants argue that Count III, alleging a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), must be dismissed for two reasons: (1) it is barred by the economic loss doctrine; and (2) Plaintiffs cannot establish all of the required elements of the claim. (Doc. 3, ¶¶ 16-17). We will address each argument in turn.

### A. Economic Loss Doctrine

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). As a result, "the doctrine prevents a plaintiff from

recovering economic losses in tort without physical injury [and] '[w]here [a] plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort.'" *Martin v. Ford Motor Co.*, 765 F.Supp.2d 673, 684 (E.D. Pa. 2011) (quoting *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *3 (E.D.Pa. Mar. 9, 2010)).

In *Werwinski*, purchasers and leasers of Ford automobiles alleged the vehicles contained defective transmissions and brought a putative class action in against the manufacturer, asserting claims for breach of express warranty, breach of implied warranty, fraudulent concealment, and violations of UTPCPL. On appeal, the Third Circuit affirmed the District Court's application of the economic loss doctrine to the Appellant's claims under the UTPCPL, predicting that the Supreme Court of Pennsylvania would likely apply the economic loss doctrine to transactions involving ordinary consumers. *Werwinski*, 286 F.3d at 673-674. The Circuit also declined to carve out an exception for intentional fraud. *Id.* at 680-681.

Relying on *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013), Plaintiffs argue that "recent case law from the Pennsylvania Superior Court stands in direct contrast to the Third Circuit's prediction in *Werwinski* . . . as to the status of Pennsylvania jurisprudence concerning the economic loss doctrine." (Doc. 5, at 12). In *Knight*, the Superior Court stated that "[o]ur research reveals . . . that our Supreme Court has defined the economic loss doctrine as providing 'no cause of action exists for *negligence* that results

solely in economic damages unaccompanied by physical injury or property damage.'" *Knight*, 81 A.3d at 951-952 (emphasis in original). Plaintiffs misinterpret this language in *Knight* as narrowing the applicability of the economic loss doctrine to negligence actions, stating that "Plaintiffs do not seek redress under a theory of negligence, but rather maintain Defendants violated statutory provisions of the UTPCPL, a clear distinction" (Doc. 5, at 12). However, in footnote 9 of *Knight*, the Superior Court noted that there are other definitions of the economic loss doctrine, citing *Debbs v. Chrysler Corp.*, 810 A.2d 137, 164 n. 32 (Pa. Super. 2002) (the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract") and *Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 188 n. 26 (Pa. Super. 1999) (the economic loss doctrine "bar[s] a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property"). Further, in *Knight*, the allegations of fraud and misrepresentation occurred *prior* to the signing of any contract, making that case factually different from the action currently before this Court. All of Plaintiffs' allegations of dishonesty and misrepresentation and deceptive practices occurred after the policy of insurance was entered into by Plaintiff and Defendants. (*See generally*, Compl.).

As a result, despite Plaintiffs arguments to the contrary, *Knight*, and similar Pennsylvania state case law, did not overrule *Werwinski*, which controls in this case.[1] Therefore, all of Plaintiffs' allegations under Count III are inextricably intertwined with the breach of contract claim such that they are barred by the economic loss doctrine or the "gist of the action" doctrine (barring tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007); *see also, eToll, Inc., v. Elias/Savion Adv., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements.")). Specifically, Plaintiffs' claims are based solely in contract because they are based on the insurance company's obligations under the policy of insurance, they represent claims for purely

---

[1] Plaintiffs are correct that district courts in this Circuit have repeatedly recognized that *Werwinski* *may be* inconsistent with Pennsylvania law. *See, e.g., Martin*, 765 F.Supp.2d at 685 n.8 (collecting cases). However, "[w]hile an issue such as this remains unsettled under Pennsylvania case law, this Court is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue." *Id.* (internal citations and quotation marks omitted). Therefore, in the absence of a contrary decision by the Pennsylvania Supreme Court, we are bound by the Third Circuit's decision in *Werwinski*.

9

economic loss, and there is an absence of any allegation of actual physical harm to Plaintiffs or their property[2].

## B. Elements of the UTPCPL

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Cons. Stat. § 201-3. The Consumer Law specifies the applicable unfair methods of competition and unfair or deceptive acts or practices, and includes a catchall provision. 73 Pa. Cons. Stat. § 201-2(4). "To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Slapikas v. First American Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D.Pa. 2014) (citing *Seldon v. Home Loan Servs.*, 647 F.Supp.2d 451, 470 (E.D.Pa.2009)).

As Count III has already been dismissed due to the economic loss doctrine, it is unnecessary to determine whether the Plaintiffs adequately pleaded all of the required elements of this claim. Consequently, Defendants' motion to dismiss Count III on the basis that the element of justifiable reliance cannot be established as a matter of law (Doc. 4, at 14), and therefore Plaintiff cannot meet the second and third required elements, will be denied.

---

[2] Plaintiffs admit that "the allegations against Liberty Mutual and First Liberty have nothing to do with them causing damage to [Plaintiffs'] property, no. It's their failure to honor the policy. The resulting factor in terms of the oil leak is the damage. It's what they didn't do under the policy." (Unoff. Tr. 14-15).

## V. Conclusion

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss Count III of Plaintiffs' Complaint with prejudice. (Doc. 3). A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge